UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM A. DEPARDO,

                    Plaintiff,

v.                                                    Civil Action No. 04-10248-DPW

MFS/SUN LIFE FINANCIAL
DISTRIBUTORS, INC. d/b/a
SUN LIFE OF CANADA and
TAC WORLDWIDE COMPANIES,

                    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT TAC WORLDWIDE COMPANIES' MOTION
FOR SUMMARY JUDGMENT ON THE ADMINISTRATIVE RECORD**

Defendant TAC Worldwide Companies ("TAC") hereby submits this Memorandum of

Law in Support of its Motion for Summary Judgment on the Administrative Record.  Also in

support of its Motion, and in accordance with Local Rule 56.1, TAC has submitted a separate

statement of material facts taken from the Administrative Record (the "Record").[1]  As the

Record makes clear, William A. DePardo ("Mr. DePardo" or "Plaintiff") has no legal or factual

basis whatsoever for his claims that TAC denied him long term disability ("LTD"), short term

disability ("STD") and life insurance benefits in violation of the Employee Retirement Income

Security Act of 1974 ("ERISA"), Section 502(a)(1)(B), codified as 29 U.S.C. § 1132(a)(1)(B).

As a threshold matter, summary judgment must enter in TAC's favor on Plaintiff's claims for

denial of LTD and life insurance benefits because TAC is not a proper party to those claims.

Defendant MFS/Sun Life Financial Distributors, Inc. d/b/a Sun Life of Canada ("Sun Life"), as

the claims administrator for TAC's LTD and life insurance aspects of TAC's employee welfare benefit plan (the "Plan"), exercised full discretionary responsibility in the administration of LTD and life insurance claims and had the sole obligation to pay claims due under the terms of the Plan. Because TAC did not have the ability to make ultimate decisions regarding eligibility, to review benefit denials, or the obligation to pay due claims, TAC cannot be held liable for Plan LTD or life insurance benefits. In any event, Plaintiff's claim against TAC for life insurance benefits is not colorable under Section 1132(a)(1)(B) and his coverage lapsed due to his own inaction.

With regard to Plaintiff's claim that TAC miscalculated the amount of his STD benefits, TAC's determinations must be reviewed under the deferential arbitrary and capricious standard because the language of the STD plan documents, *in toto*, demonstrates that TAC had discretionary authority to decide STD claims. Based on that standard, which requires a court to uphold any claim determination that is supported by substantial evidence, TAC is entitled to summary judgment on Plaintiff's STD claim because TAC simply followed the terms of the plan in calculating Plaintiff's STD benefit. Moreover, even if this Court were to apply the less deferential *de novo* standard of review, TAC's calculation of Plaintiff's STD benefits was manifestly correct. Plaintiff cannot possibly prove that TAC's exclusion from his STD benefit calculation of a discretionary bonus that had been previously paid to Plaintiff was in any way inconsistent with the unambiguous terms of the STD plan or the common understanding of those terms.

For each of these reasons, amplified more fully below, the Court should grant summary judgment in favor of TAC and dismiss TAC from this action.

---

[1] TAC's Local Rule 56.1 Statement of Material Facts is referred to herein as "¶ __".

## ARGUMENT

Plaintiff cannot sustain his burden of proof to overcome summary judgment. Summary judgment must be granted under Rule 56 of the Federal Rules of Civil Procedure if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If it is evident from the record that the party opposing summary judgment will be unable to establish the essential elements of his case, then summary judgment must be granted. See Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). On issues where the non-movant bears the burden of proof, he must present definite, competent evidence supporting all elements of his claim in order to rebut the summary judgment motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-52 (1986). That is, Mr. DePardo may not "rest upon the mere allegations or denials of [his] pleading," but must come forward with specific facts from the Record. Fed. R. Civ. P. 56(e). Further, the mere existence of *some* alleged factual dispute will not defeat a summary judgment motion. The issue "is not whether there is literally no evidence favoring the non-movant, but whether there is any upon which a [trier of fact] could properly proceed to find a verdict in that party's favor." DeArteaga v. Pall Ultrafine Filtration Corp., 862 F.2d 940, 941 (1st Cir. 1988).

ERISA cases such as this one present a special situation when put into a summary judgment posture. The summary judgment standard is altered where, as here, review is under the arbitrariness standard: "Summary judgment is merely a mechanism for tendering the issue and no special inferences are to be drawn in favor of a plaintiff resisting in summary judgment; on the contrary, the rationality standard tends to resolve doubts in favor of the administrator." DiGregorio v. Pricewaterhouse Coopers Long Term Disability Plan, No. 03-11191, 2004 WL 1774566, at *10 (D. Mass. Aug. 9, 2004) (Woodlock, J.). In the instant case, Plaintiff cannot

possibly establish that he is entitled to additional LTD, STD or life insurance benefits from TAC

or that TAC unlawfully denied him such benefits in violation of ERISA Section 502(a)(1)(B).

Accordingly, summary judgment must be granted in TAC's favor.

## I.    TAC IS NOT A PROPER PARTY TO PLAINTIFF'S SECTION 502(A)(1)(B) CLAIM FOR LTD AND LIFE INSURANCE BENEFITS

TAC is not a proper party to Plaintiff's claim alleging denial of Plan LTD and life

benefits in violation of ERISA Section 502(a)(1)(B).  "The proper party defendant in an action

concerning ERISA benefits [under § 502(a)(1)(B)] is the party that controls administration of the

plan," *i.e.*, the party that decides claims for benefits and the party that is responsible for paying

claims under the plan.[2] DiGregorio, 2004 WL 1774566, at *15 (citing Terry v. Bayer

Corporation, 145 F.3d 28, 36 (1st Cir. 1998)); Barrs v. Lockheed Martin Corporation, 287 F.3d

202, 205 (1st Cir. 2002) ("[t]he district court held that the denial of benefit claim [pursuant to

Section 502(a)(1)(B)] did not run against Lockheed as an employer," referring to Justice

Woodlock's grant of employer's motion for summary judgment); Daniel v. Eaton Corp., 839

F.2d 263, 266 (6th Cir. 1988) ("[u]nless an employer is shown to control administration of a

plan, it is not a proper party defendant in an action concerning benefits"); Layes v. Mead Corp.,

132 F.3d 1246, 1249 (8th Cir. 1998) (same); Baker v. Big Star, 893 F.2d 288, 290 (11th Cir.

1989) (Section 502(a)(1)(B) claim against plan administrator for denial of benefits dismissed

where administrator did not have authority to decide the claim); Harless v. Research Institute of

America, 1 F. Supp. 2d 235, 241 (S.D.N.Y. 1998) (employer was not proper defendant in claim

---

[2] Section 1132(a)(1)(b) provides:

> A civil action may be brought—
> (1) by a participant or beneficiary . . . (B) to recover benefits due
> to him under the terms of his plan, to enforce his rights under the

for recovery of benefits under 502(a)(1)(B), since it could not be liable for failing to pay

benefits).[3]  TAC cannot be found liable for and, thus, is not a proper party to Plaintiff's suit for

LTD and life insurance benefits because TAC has neither the authority to decide claims for LTD

or life insurance benefits nor any obligation to pay due claims under the Plan.[4]

It is undisputed that Sun Life insured and administered claims for LTD and life insurance

benefits under the plan.  See Sun Life Assurance Company of Canada's Answer to Plaintiff's

---

terms of the plan, or to clarify his rights to future benefits under
the terms of the plan.  29 U.S.C. § 1132(a)(1)(B).

[3] Accord Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997); Kishter v. Principal Life Ins. Co., 186 F. Supp. 2d 438, 442 n.4 (S.D.N.Y. 2002) ("Plaintiff likely did not include [the employer] in § 502(a)(1)(B) wrongful denial of benefits claim because . . . Second Circuit has held that it cannot be raised against employer as de facto administrator") (citing Yoon v. Fordham Univ. Faculty and Admin. Retirement Plan, 263 F.3d 196, 207 (2d Cir. 2001) and Crocco v. Xerox Corp., 137 F.3d 105, 107 (2d Cir. 1998)); MacMillan v. Provident Mutual Life Ins. Co., 32 F. Supp. 2d 600, 604-05 (W.D.N.Y. 1999) (Larimer, C.J.) (granting summary judgment to employer on plaintiff's § 502(a)(1)(B) claim where employer played no role in deciding claim and where no relief could be granted because employer could not be directed to pay benefits as it is not employer's decision to do so under plan); Cooksey v. Metropolitan Life Ins. Co., No. 3:02-CV-2583, 2004 WL 1636973, at *2-3 (N.D. Tex. June 17, 2004) (granting employer's motion for summary judgment and holding that it was not proper defendant to ERISA claim for benefits under Section 502(a)(1)(B) where it had no responsibility for paying claims under plan); Metropolitan Life Ins. Co. v. Palmer, 238 F. Supp. 2d 826, 830 (E.D. Tex. 2002) (granting summary judgment to employer and holding that the participant's employer was not a proper defendant to a claim for benefits where, "[u]nder the express terms of the Plans, MetLife has the obligation to process and pay the proceeds.  Therefore, [plaintiff] cannot bring an action to force [the employer] to perform an obligation it has not contractually agreed to perform."); Rieser v. Standard Life Ins. Co., No. Civ. A. 03-5040, 2004 WL 1427131, at *5 (E.D. Pa. 2004) (employer "cannot be subject to liability under § 502(a)(1)(B) and is therefore entitled to summary judgment" where employer did not have any authority to determine eligibility for life insurance benefits under the policy and was not involved in the decision to deny benefits).

[4] Arguably, only the Plan itself is a proper defendant in a suit arising under § 1132(a)(1)(B).  See Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1490 (7th Cir. 1996); Lee v. Burkhart, 991 F.2d 1004, 1009 (2d Cir. 1993); Gibson v. Prudential Ins. Co. of Am., 915 F.2d 414, 417 (9th Cir. 1990); but see DiGregorio, 2004 WL 1774566, at *15 (analyzing cases and noting "the First Circuit has not addressed the issue head-on" but "has indicated that it agrees with the line of cases that allow a plan administrator [with actual authority to control the administration of the plan] to be sued under § 1132(a)(1)(B)).

Am. Complaint at ¶ 4, 5.  Moreover, under the express terms of the LTD and life insurance
policy, Sun Life is given, and it in fact did exercise, the complete authority to determine a
participant's eligibility for LTD and life benefits.  TAC had no authority to second guess Sun
Life's determinations.  Furthermore, only Sun Life as the insurer of the LTD and life insurance
plan, and not TAC, is obligated to pay benefits due under the Plan.  Specifically, the Plan
provides in relevant part:

- Sun Life . . . agrees to pay the benefits in accordance with all provisions provided by this Policy for Basic Life, Basic Accidental Death and Dismemberment, Optional Life, Optional Accidental Death and Dismemberment, Dependent Life and Long Term Disability Insurance (¶ 6-8, 11);

- If Sun Life receives Notice and Proof of Claim that an Employee dies while insured . . . Sun Life will pay the amount of Life Insurance in force on the Employee's date of death (¶ 7);

- If Sun Life receives Notice and Proof of Claim that an Employee is Totally or Partially Disabled, a Net Monthly Benefit will be payable . . . (¶ 8);

- Termination of Long Term Disability Benefits . . . Total or Partial Disability Benefits will cease on . . . the date Sun Life determines the Employee is able to perform on a full-time basis all of the material and substantial duties of his own occupation . . . (¶ 9);

- Notice and Proof of Claim prior to any payment under this Policy . . . Proof must be satisfactory to Sun Life  (¶ 10-12);

- When Sun Life receives satisfactory Proof of Claim, benefits payable under this Policy will be paid for any period for which Sun Life is liable (¶ 10-12).

In addition, the Summary Plan Description ("SPD") of the LTD and life aspects of the Plan, a
copy of which was given to Mr. DePardo during his employment, provides in relevant part:

- Proof [of claims] must be satisfactory to Sun Life . . . Benefits are payable when Sun Life receives satisfactory Proof of Claim.  (¶ 12.)[5]

---

[5] That the SPD lists TAC as the Plan Administrator and states that the Plan Administrator has
authority to manage the operation and administration of the Plan, [0753], in no way changes the

Because Sun Life actually controlled the administration of LTD and life insurance claims under the Plan, had total authority to decide claims, and was solely responsible for paying due claims, TAC, as a matter of law, cannot be held liable for paying LTD and life benefits due under the Plan.  Thus, summary judgment must enter in TAC's favor on those claims.[6]

## II.    PLAINTIFF'S CLAIM THAT TAC'S CONDUCT DENIED HIM LIFE INSURANCE COVERAGE IS NOT COLORABLE UNDER SECTION 502(A)(1)(B)

In the instant case, Mr. DePardo's sole statutory basis for recovering life insurance benefits is ERISA § 502(a)(1)(B), which he raises against both Sun Life and TAC.  Although not supported by the facts, his claim against Sun Life is to recover benefits allegedly due him under the terms of his group life insurance policy.  See Am. Complaint at ¶ 32.  In contrast, Plaintiff's alternate claim against TAC for life insurance benefits assumes that he is not entitled to benefits under the terms of the policy.  Indeed, Mr. DePardo's claim for life insurance benefits against TAC is based on TAC's alleged failure to notify him that it had discontinued paying premiums to Sun Life on his life insurance policy, which failure, according to Mr. DePardo, caused his conversion right to lapse.  See Am. Complaint at ¶ 30 ("Mr. DePardo was denied [the right to convert the life insurance policy] by TAC's failure to notify him.").  This is a roundabout way of

_____

determination that Sun Life controlled the administration of the LTD and life insurance plan.  In determining whether an entity is subject to liability under ERISA § 502(a)(1)(B), "the focus is not on labels but rather on function and, specifically, what party [actually] controls the administration of the plan."  DiGregorio, 2004 WL 1774566, at *15; MacMillan 32 F. Supp. 2d at 604.

[6] Plaintiff's claim under § 502(a)(1)(B for life insurance benefits also fails as a matter of law for the additional reason that he indisputably never submitted a claim for life insurance benefits to Sun Life.  "Where an insurance claim was never made, a plaintiff has not exhausted his administrative remedies . . . ."  Bekiroglu v. Paul Revere Life Ins. Co., 223 F.Supp.2d 361, (D. Mass. 2002) (aff'd 2003 WL 22213863 (1st Cir. 2003) (citing Drinkwater v. Metro. Life. Ins.

alleging that TAC somehow breached a fiduciary duty it owed to Mr. DePardo for which, at bottom, DePardo claims that TAC should pay him monetary damages equal to the value of the life insurance benefit he thinks he is due under the plan. Put simply, Plaintiff's claim against TAC is not colorable under ERISA § 502(a)(1)(B). See Watson v. Deaconess Waltham Hosp., 298 F. 3d 102, 104 (1st Cir. 2002) (claim for benefits not made where plaintiff alleged that employer failed to inform him of the consequences of switching from full-time to part-time work on his long term disability benefits; plaintiff did not sue under Section 502(a)(1)(B) because "there would be obvious problems in doing so"); Sampson v. Rubin, Civ. A. 00-10215, 2002 WL 31432701, *5-6 (D. Mass. Oct. 29, 2002) (Woodlock, J.) ("I find that [Plaintiff] had no 'colorable claim' to vested benefits because his claim on this issue in this litigation concerns a failure to notify him of the cancellation of the plan, not a wrongful denial of benefits to which he was entitled.") (citing Winchester v. Pension Comm. Of Michael Reese Health Plan, 942 F.2d 1190, 1193 (7th Cir. 1991) (finding no colorable claim for vested benefits where former employee did not seek benefits denied under plan but rather damages for failure to provide plan information upon request)); Kishter v. Principal Life Ins. Co., 186 F. Supp. 2d 438, 442 (S.D.N.Y. 2002).

The Kishter case is instructive because there the plaintiff estate executor, like DePardo here, included claims in his complaint against both the employer and a group insurer for denial of life insurance benefits. Compare 186 F. Supp. 2d at 442 with Am. Complaint at ¶ 32. The plaintiff in Kishter admitted that life insurance benefits were not payable under the group plan, but alleged that the employer should be liable for erroneously telling the decedent that she was covered by the plan. 186 F. Supp. 2d at 442. The Kishter court found that, because the plaintiff

Co., 846 F.2d 821, 825 (1st Cir. 1988) and McMahon v. Digital Equipment Corp., 998 F.Supp.

had admitted for the purpose of his claim against the employer that he was not entitled to

benefits under the plan, the claim could not be one to recover benefits wrongfully withheld under

ERISA Section 502(a)(1)(B).  So too here, Mr. DePardo implicitly has admitted in his claim

against TAC that he is not entitled to recover benefits under the plan by his accusation that

TAC's failure to notify him that it was discontinuing premium payments resulted in his loss of

coverage.  <u>See</u> Am. Complaint at ¶ 30.  Because Plaintiff admits he is not entitled to recover

benefits under the plan, his claim against TAC pursuant to ERISA Section 502(a)(1)(B), like the

<u>Kishter</u> plaintiff's claim against the employer, "cannot be construed as one to recover benefits

wrongfully withheld" <u>See</u> 186 F. Supp. 2d at 442.  Accordingly, Plaintiff's Section 502(a)(1)(B)

claim for life insurance benefits against TAC must be dismissed.[7]

---

62, 70 (D. Mass. 1998) (<u>aff'd</u> 162 F.3d 28 (1st Cir. 1998)).

[7] Plaintiff has not alleged in his Amended Complaint that TAC has violated ERISA Section
502(a)(3).  Had he done so, that claim likewise would be subject to dismissal because money
damages, the only relief sought by Plaintiff against TAC here, are not authorized by subsection
(a)(3).  That Section allows only "appropriate equitable relief" for a breach of a fiduciary duty.
<u>Great-West Life & Annuity Ins. Co.</u> v. <u>Knudson</u>, 534 U.S. 204, 210-11 (2002).  Since <u>Great-
West</u> was decided, federal courts in Massachusetts (including this Court) and around the nation
have universally dismissed claims for compensatory damages and other monetary relief brought
by plaintiffs under ERISA Section 502(a)(3).  <u>See</u> <u>Sampson</u> v. <u>Rubin</u>, Civ. A. 00-10215, 2002
WL 31432701, *5-6 (D. Mass. Oct. 29, 2002) (Woodlock, J.) (granting summary judgment to
defendants because no remedy was available where plaintiff alleged breach of fiduciary duty
against employer for failure to notify him of the termination of employer's long term disability:
"in light of <u>Great-West Life</u> . . . I conclude that Sampson may not use the equitable enforcement
mechanisms of § 1132(a)(3) to secure compensatory relief for an alleged breach of fiduciary
duty . . . .  [Plaintiff's] request for compensation is, at bottom, an attempt to recover benefits he
would have received had the . . . policy not been cancelled.  Such relief is outside the scope of
equitable remedies envisioned by § 1132(a)(3) and summary judgment is therefore
appropriate."); <u>Caffey</u> v. <u>Unum Life Ins. Co.</u>, 302 F.3d 576, 583 (6th Cir. 2002); <u>Mattern</u> v.
<u>Honeywell Int'l, Inc.</u>, Civ. JFM-02-1109, 2003 WL 194492, *3 (D. Md. Jan 22, 2003); <u>Nelson</u> v.
<u>Neilson Media Research, Inc.</u>, No. 02 CIV. 1222, 2002 WL 31833760 (S.D.N.Y. Dec. 12, 2002);
<u>Hartman</u> v. <u>Wilkes-Barre Cen. Hosp.</u>, No. 3:02CV0941, 2002 WL 31746851, *4 (M.D.Pa. Dec.
5, 2002); <u>McSharry</u> v. <u>Unumprovident Corp.</u>, No. 1:02-CV-208, 2002 WL 31855269, *7 (E.D.
Tenn. Dec. 4, 2002); <u>Augienello</u> v. <u>Coast-to-Coast Fin. Corp.</u>, No. 01 CIV. 11608, 2002 WL
1822926, *5-6 (S.D.N.Y. Aug. 7, 2002); <u>Peterman</u> v. <u>Metropolitan Life Ins. Co.</u>, 217 F. Supp. 2d

III.    **PLAINTIFF'S OWN INACTION CAUSED HIS LIFE INSURANCE COVERAGE TO LAPSE**

Were Plaintiff's claim for life insurance benefits against TAC pursuant to ERISA § 502(a)(1)(B) not easily disposed of as a matter of law, the undisputed facts demonstrate that his life insurance coverage lapsed as a result of his own inaction.  TAC notified Mr. DePardo that his employment was terminated as of April 5, 2002.  (¶ 3.)  Following this notification, TAC sent to Mr. DePardo notice of his group life insurance conversion rights, informing him in no uncertain terms that his life insurance ended on the date his employment terminated (April 5, 2002), but that he might be eligible to convert his group life insurance coverage to an individual policy.  (¶ 16.)  Furthermore, the notice directed him to apply for conversion and pay the required premium within 31 days.  Specifically, this notice provided in relevant part:

> Information regarding your Benefits . . . Your life insurance ends on the date your employment terminates; however, you may be eligible to convert your group life insurance coverage, provided through Sun Life of Canada, to an individual policy.  Because rates are updated periodically, please call 1-800-247-6875 to verify the rates currently in effect.  You must apply for conversion and pay the required premium within 31 days following termination of your insurance.  (Id.)

The clear terms of the life insurance plan, which were described in the Summary Plan Description ("SPD"), also placed Mr. DePardo on notice of his conversion rights.  The conversion privilege clearly provides that if the employee's life insurance ceases due to termination of his employment, then the employee may apply for an individual policy by making written application to Sun Life and paying the first premium within the 31 day period following the date insurance coverage ceased.  The relevant policy provision provides:

---

807, 809 (E.D. Mich. 2002); Leung v. Skidmore, Owings & Merrill, 213 F. Supp. 2d at 1103-1104; Kishter 186 F. Supp. 2d at 444-45.

> Application for an Individual Policy . . . written application must be made to Sun Life along with payment of the first premium, within the 31 day period (the 31 day conversion period) following the date the insurance ceases or reduces (¶ 13.)

Moreover, the SPD states with regard to group life insurance conversion:

> How do I convert my life insurance?  You convert by applying to Sun Life for an individual policy along with sending payment of the first premium within 31 days after any part of your Life Insurance ceases or reduces.  This is your 31 day conversion period.  (¶ 14.)

Finally, Sun Life informed Plaintiff of his conversion right and the procedure for doing so by letter dated April 1, 2002:

> According to our records . . .   You ceased active employment due to illness on December 17, 2001.  Since you were over age 60 on that date, you do not meet the Group Policy requirements for [waiver of policy premium].  Your employer has the option of continuing your coverage, for absence due to illness, by payment of premium for up to 12 months from the date you ceased active employment, while this Group Policy is in force.  If they terminate your coverage, you have 31 days to convert to an individual policy, without medical examination.  Your employer will have all of the necessary paperwork in the event that occurs. (¶ 15.)

Yet, despite knowing that his employment terminated effective April 5, 2002 and despite receiving notice from TAC that his life insurance terminated as of that date and that he could apply for conversion within 31 days, Plaintiff did nothing to convert to individual coverage within the conversion period.  Instead, after the conversion period had expired, Mr. Depardo's counsel wrote to Sun Life erroneously claiming that Mr. DePardo had not received any notification from TAC as to whether his life insurance had been terminated.  (¶ 17.)   In response, Sun Life informed DePardo's by letter dated May 20, 2002 that he could submit his application for conversion coverage by June 20, 2002 in the event his coverage had been previously terminated, and enclosed a conversion package.  (¶ 18.)

11

Inexplicably, despite Sun Life's enlargement of the conversion period, it appears that Plaintiff never applied to Sun Life for conversion of his group insurance coverage to an individual policy.  These undisputed facts could not more clearly demonstrate that Mr. DePardo's life insurance coverage lapsed as a result of his own inaction in failing to take steps to convert his policy within the conversion period -- or, for that matter, within the extended conversion period offered to Plaintiff by Sun Life.  In similar circumstances, courts do not hesitate to enter summary judgment against plaintiffs who sit on their rights.  See, e.g., Walley v. Agri-Mark, Inc., No. 00-11393, 2003 WL 22244957, at *3 (D. Mass. Sept. 30, 2003) (Zobel, J.) ("Plaintiff could have taken action to convince [insurer] that the [untimely] claim was filed as soon as reasonably possible, but he did nothing.  Plaintiff's own inaction caused the denial of benefits, so he therefore cannot allege that [his employer] failed to . . . make available long term disability benefits for the plaintiff."); Ghazi v. Fiserv, Inc., 904 F. Supp. 823, 828 (N.D. Ill. 1995) (granting summary judgment to employer and insurer where plaintiff did not comply with the terms of his insurance policy by exercising his right to convert to a personal policy within the requisite 31-day period) (citing Howard v. Gleason Corp., 901 F.2d 1154 (2d Cir. 1990) (affirming summary judgment for defendant insurer when insured failed to convert to a personal policy within requisite 31 days) and Butler v. MFA Life Ins. Co., 591 F. 2d 448 (8th Cir. 1979 (affirming grant of summary judgment for insurer where insured failed to convert his group life insurance to a personal policy within the 31 days required by the policy)).

## IV.    TAC'S CALCULATION OF THE AMOUNT OF PLAINTIFF'S STD BENEFIT WAS MANIFESTLY CORRECT UNDER THE MORE STRINGENT DE NOVO STANDARD OF REVIEW.

Although this Court should review TAC's calculation of Mr. DePardo's weekly STD benefit under the arbitrary and capricious standard because the totality of the language contained in STD plan documents plainly grants TAC substantial discretion in making eligibility determinations, TAC's calculation must be affirmed because it was manifestly correct under the more stringent *de novo* standard of review. Specifically, TAC's exclusion from its calculation of Mr. DePardo's STD benefit of discretionary <u>bonuses</u> that <u>in the past</u> had been paid to Plaintiff was in accordance with the unambiguous terms of the plan, which provide that only base salary and commissions (which Mr. DePardo did not receive) are used in calculating STD benefit payments. Simply put, under the unambiguous terms of the STD plan, Mr. DePardo had no reasonable expectation that TAC would include a discretionary bonus payment he had previously been paid in its calculation of his STD benefit amount. Moreover, Plaintiff's characterization of these bonus payments as commissions is a transparent attempt to bring them within the plan language and wholly unfounded.

A.    **This Court Should Review And Affirm TAC's Calculation Of The Amount of Plaintiff's STD Benefit Under An Arbitrary And Capricious Standard, <u>Which Strictly Limits A Court's Ability to Disturb That Determination</u>**

In <u>Firestone Tire & Rubber Co</u>. v. <u>Bruch</u>, the Supreme Court determined that the arbitrary and capricious standard of review applies where the plan at issue "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. 101, 115 (1989); <u>accord</u> <u>Terry</u> v. <u>Bayer Corp.</u>, 145 F.3d 28, 37 (1st Cir. 1998). Importantly, "[t]here are no 'magic words' determining the scope of judicial review of decisions to deny benefits." <u>DiGregorio</u> 2004 WL 1774566, at *13. "When a grant of discretionary authority is found," the arbitrary and capricious standard of review applies. <u>Brigham</u> v. <u>Sun Life of Canada</u>, 317 F.3d 72, 81 (1st Cir. 2003) (<u>citing</u> <u>Recupero</u> v. <u>New</u>

England Tel. & Tel. Co., 118 F.3d 820, 827 (1st Cir. 1997)).  Under that standard, TAC's

determination must be upheld if supported by substantial evidence, and despite the existence of

contradictory facts supporting Plaintiff's position.  See Leahy v. Raytheon Co., 315 F.3d 11, 17

(1st Cir. 2002) (In applying the arbitrary and capricious standard of review, a court "asks only

whether a factfinder's decision is plausible in light of the record as a whole . . . or, put another

way whether the decision is supported by substantial evidence in the record.") (citations

omitted); Terry 145 F.3d at 29 (A court must not substitute its judgment for that of the

decisionmaker whose decision "will not be disturbed if it is reasonable.") (citations omitted);

Sullivan v. Raytheon Co., 262 F.3d 41, 52 (1st Cir. 2001).[8]

In the instant case, the totality of the language contained in the STD plan documents

grants TAC as administrator of the STD aspect of the Plan, the discretionary authority to

determine eligibility for STD benefits.[9]  The STD plan documents state the following

discretionary language in relevant part:

- Your disability must be approved by a doctor and then approved through our insurance carrier before payment will begin (¶ 20);

---

[8] Accord Ivy v. Raytheon Employees Disability Trust, 307 F. Supp. 2d 301, 306 (D. Mass. 2004) ("the question before the Court is not which side [the Court] believe[s] is right, but whether the insurer had substantial evidentiary grounds for a reasonable decision in its favor.") (internal quotes omitted) (citing Matias-Correa v. Pfizer, Inc., 345 F.3d 7, 12 (1st Cir. 2003); Downey v. Aetna Life Ins. Co., No. Civ. A. 02-10103, 2003 WL 21135710, *8 (D. Mass. 2003) (Woodlock, J.) ("'Substantial evidence' means evidence reasonably sufficient to support a conclusion . . . sufficiency, of course, does not disappear merely by reason of contradictory evidence.") (citations omitted); Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 29 (1st Cir. 2001); Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 183-84 (1st Cir. 1988).

[9] A court must examine all relevant plan documents, including the SPD, in determining which standard of review is applicable.  Sidou v. Unum Provident Corp., 245 F.2d 207, 218 (D. Me. 2003) (Language in SPD must be considered in determining standard of review); Wade v. Life Ins. Co. of N. America, 271 F. Supp 2d 307, 318-319 (D. Me. 2003 (Discretionary language in SPD must be considered).

- In connection with the operation of the [STD] Plan, [TAC] has requested Sun Life . . . to furnish medical review and duration *recommendations* for [STD] claims . . . (¶ 21 (emphasis supplied));

- Sun Life shall . . . *advise* [TAC] as to the disposition of each claim . . . (¶ 21(emphasis supplied));

Summarizing the provisions, claims for STD benefits must be proved through a physician and then proved through Sun Life before TAC determines whether to pay such claims.  Moreover, TAC receives only the *advice* and *recommendation* of Sun Life in determining eligibility for STD claims, plainly retaining complete authority to make final determinations concerning a claimant's eligibility for STD plan benefits.  Thus, the totality of the relevant plan and SPD provisions in this case dictates that this Court must apply the arbitrary and capricious standard to TAC's calculation of Mr. DePardo's STD benefit amount.  As discussed *infra*, TAC's exclusion of a discretionary bonus from its calculation of Plaintiff's STD benefit amount was not arbitrary or capricious.  Rather, it was fully consistent with the STD plan language.  As a result, TAC's decision in this regard must be affirmed and summary judgment must enter in TAC's favor.  See Massey v. Stanley-Bostitch, Inc., 255 F. Supp. 2d. 7 (D.R.I. 2003) (plan administrator's calculation of benefits available to participant in ERISA retirement plan was not arbitrary and capricious, in that, benefits were calculated in accordance with terms of plan).

**B.     TAC's Calculation of STD Benefits was Manifestly Correct Under the More Stringent *De Novo* Standard of Review**

Should this Court decide that the language in the STD plan documents does not confer sufficient discretion upon TAC to warrant the application of the arbitrary and capricious standard to its review of TAC's STD benefit calculation, TAC's motion for summary judgment on Plaintiff's STD claim still must be granted because TAC's calculation plainly was correct under the more stringent *de novo* standard of review.  "Even if review of the administrator's

15

interpretation were *de novo* -- it is in fact deferential . . . ."  Liston v. Unum Corporation Officer Severance Plan, 330 F.3d 19, 23 (1st Cir. 2003) (citing Terry 145 F.3d at 40).  In reviewing TAC's calculation of STD benefits *de novo*, this Court is guided by the language of the plan. Courts interpret plan language "in an ordinary and popular sense as would a person of average intelligence and experience," such that the language is given its generally accepted meaning if there is one.  Allen v. Adage, Inc., 967 F.2d 695, 701 (1st Cir. 1992); Burnham v. Guardian Life Ins. Co. of America, 873 F.2d 486, 489 (1st Cir. 1989) ("straightforward language in an ERISA regulated insurance policy should be given its natural meaning").

Here, Plaintiff's claim for additional STD benefits against TAC is based solely on the allegation that TAC improperly excluded from its calculation of STD benefits due, discretionary bonus payments that TAC had stopped paying to Plaintiff over a month before he became disabled.  Hoping to bring these payments within the terms of the STD plan, Plaintiff characterizes them as commissions, although the undisputed evidence and the common understanding of that term belie such a characterization.  The terms of the policy are not in any way ambiguous as to what forms of compensation are to be used as the basis for determining STD benefit payments.  Rather, they have ordinary and generally accepted meanings.  The STD plan provides in relevant part:

> You will receive 66 2/3% of your weekly salary (an average of your *base salary plus commission*) for up to a total of 13 weeks you need to be out of work.  (¶ 20 (emphasis supplied).)

Thus, the plan provides that TAC will calculate weekly STD benefits by multiplying weekly salary by 66 2/3%.  "Weekly salary" is defined as the sum of base salary plus commissions, if commissions are being paid to the employee.  Consistent with the unambiguous terms of the plan, in calculating Mr. DePardo's STD benefit payment, TAC multiplied his weekly base salary

in effect as of December, 2001, $1,634, by 66 2/3% to arrive at a weekly STD benefit amount of $1,088.  Because Plaintiff was not receiving any commission income in December, 2001, TAC did not include any such income in its calculation.

As a preliminary matter, Plaintiff cannot dispute that at the time he became disabled on or about December 17, 2001, Plaintiff was only receiving from TAC base salary at the weekly rate of $1,634.  (¶ 26.)  He was notified in November 2001 that he would no longer receive the monthly bonus payments.  (¶ 28.)  It is undisputed that he was not being paid any extra remuneration -- commissions or otherwise -- when he became disabled.  This fact alone is fatal to Mr. DePardo's STD claim against TAC.  Under the plan language, if no commissions are being paid, only base salary is used as the basis for the calculation of STD benefits.

Moreover, assuming *arguendo* that TAC had continued paying Mr. DePardo discretionary bonus payments past October, 2001 (which it did not), Mr. DePardo cannot possibly prove these payments were commissions within the meaning of the Plan's language. Indeed, the only evidence Plaintiff can point to to support such a contention is his own self-serving characterizations, which are wholly insufficient to sustain his burden of proof at summary judgment.  See Shlapack v. UNUM Life Ins. Co. of Am., 218 F. Supp. 2d 735, 741 (D. Md. 2002) (granting summary judgment for defendant where *de novo* review affirmed decision that only plaintiff's regular salary should have been used for purposes of determining amount of disability benefits; bonus payment was properly excluded under terms of plan and only evidence that it should have been included was plaintiff's self-serving characterizations of bonus as "basic monthly earnings).

A person of average intelligence and experience, reading the unambiguous policy language would conclude that only sales-related commissions and not performance bonuses were

included in the calculation of the STD benefit amount.  Plaintiff's attempt to characterize the

bonus he received as a commission is unavailing.  "Bonus" is defined as "something given in

addition to what is usual or strictly due ... money or an equivalent given in addition to an

employee's usual compensation."  Webster's New Collegiate Dictionary (1977 Ed. at 126).

Furthermore, Black's Law Dictionary defines "bonus" as:

> A consideration or premium paid in addition to what is strictly due.
> A gratuity to which the recipient has no right to make a demand.
> A premium or extra or irregular remuneration in consideration of
> offices performed or to encourage their performance … An
> addition to salary or wages normally paid for extraordinary work.
> An inducement to employees to procure efficient and faithful
> service. (6th ed. 1990)

By contrast, "commission" is defined in relevant part as:  "[t]he recompense, compensation or

reward of [a] . . . *salesman* . . ., when the same is calculated *as a percentage on the amount of his*

*transactions or on the profit to the principal*.  Mr. DePardo's monthly bonus was in the nature of

a gift made to "retain and reward" him for his service to the corporation.  TAC had no continuing

obligation to make these payments.  This could not be more clearly evidenced by TAC's

termination of these payments, which took effect in October, 2001.  (¶ 28.)  Moreover, it is

undisputed that Mr. DePardo was not performing a sales-related function.  (¶ 1.)  Nor were his

bonuses computed as a percentage of his transactions or on profit to the principal, TAC.  (¶ 28.)

Putting aside Plaintiff's blatantly self-serving mischaracterizations of these bonuses as

commission payments, there simply is no evidence whatsoever that Plaintiff was being paid

commissions by TAC.  To the contrary, in each of Mr. DePardo's payroll records included in the

Record, these extra payments are referred to only as bonuses and never once referred to as

commissions.  See (¶ 29.)  Further supporting the correctness of TAC's exclusion of previously

paid bonus payments, Sun Life reached this exact conclusion with regard to the calculation of

Plaintiff's LTD benefit amount.  More specifically, Sun Life reviewed Plaintiff's assertion that

his bonus income should have been included in the calculation of his LTD benefit as follows:

> Pursuant to your request, we have reviewed the salary information used in calculating Mr. DePardo's benefits issued to him for the period of March 15, 2002 to July 14, 2002 . . . . With regards to Mr. DePardo's compensation, please find attached a letter from his employer, TAC Worldwide, authored by Robert P. Moritz, Director of Human Resources.  In this letter, Mr. Moritz indicates that Mr. DePardo's compensation consists only of a weekly salary of $1,634 . . . .  In your September 12, 2002 letter, you indicate that Mr. DePardo's total year to date income was $227,865.62 and you supplied a copy of his pay stub.  You further quote the definition of earnings under the [LTD] policy, supplying a copy of the booklet page.  To reiterate, the definition of monthly earnings states, 'Your basic monthly earnings as reported by your Employer immediately before the first date your Total or Partial Disability begins.  Total Monthly Earnings does include commissions, but does not include bonuses, overtime pay or any other extra compensation . . . .'  *Based upon the definition, as stated above, commissions are included, however bonuses are not.  You maintain that Mr. DePardo received $12,000.00 commission per month.  However, upon review of the pay stub submitted to document his earnings, Mr. DePardo does not receive commissions, rather, his pay stub documents that he receives an executive bonus*.  This information along with his employer's confirmation regarding his salary, verifies to Sun Life that we have correctly calculated his monthly earnings and subsequent monthly benefit by using the reported income of $1,634.62 per week . . . .  With regard to the calculation of his benefits and as supported by the contractual definition of monthly earnings, the documentation provided, and his employer's verification of earnings, we maintain that the [LTD benefit] amount . . . is correct and will remain unchanged. (¶ 30 (emphasis supplied).)

Based on the foregoing, Plaintiff cannot possibly prove that TAC's calculation of STD

benefits was incorrect under the *de novo* standard of review.  Indeed, the undisputed facts plainly

demonstrate that TAC fulfilled its duty as a plan administrator to follow the terms of the plan in

awarding benefits in such a way as to "preserve[e] . . . funds for those who satisfy" plan

requirements." <u>Shlapack</u> 218 F. Supp. 2d at 741 (<u>citing</u> <u>Ellis</u> v. <u>Metro. Life Ins. Co.</u>, 126 F.3d 228, 234 (4th Cir. 1997).

## <u>CONCLUSION</u>

For the foregoing reasons, TAC respectfully requests that this Court enter summary judgment in its favor, and dismiss TAC from this action.

Respectfully submitted,

TAC WORLDWIDE COMPANIES

By its attorneys,

/s/ Robert M. Shea
Robert M. Shea, BBO # 556356
Scott J. Connolly, BBO # 651007
MORSE, BARNES-BROWN
& PENDLETON, P.C.
Reservoir Place
1601 Trapelo Road
Waltham, MA 02451
(781) 622-5930

Dated: October 14, 2004

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by first class mail on October 14, 2004

/s/ Robert M. Shea
Robert M. Shea