UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| WILLIAM A. DePARDO, <br> Plaintiff <br><br> v. <br><br> MFS/SUN LIFE FINANCIAL DISTRIBUTORS, INC. d/b/a SUN LIFE OF CANADA and TAC WORLDWIDE COMPANIES, <br> Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO.: 04-0248DPW |

**PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO THE MOTION OF SUN LIFE OF CANADA FOR SUMMARY JUDGMENT**

In opposition to Sun Life's motion for summary judgment and under Local Rule 56.1, the plaintiff, William DePardo, submits the following concise statement of material facts within the Administrative Record as to which there is no genuine issue to be tried. The plaintiff will follow the format used by the defendants in citing pages of the Administrative Record as "AR-0XXX."

**A.   LONG-TERM DISABILITY**

1.   The plaintiff adopts the uncontested facts and references to the Administrative Record set forth in Paragraphs 30 through 39 of Sun Life of Canada's Statement of Undisputed Facts in Support of its Motion for Summary Judgment. Paragraphs 30 through 39 relate to medical evaluations and reports by Mr. DePardo's treating cardiologist, Dr. Guiney and his former family physician of approximately 20 years, Dr. Niceforo and to medical record reviews and reports prepared by doctors hired to support Sun Life's denial of long-term disability benefits.

1

2.     On September 10, 2002, the Social Security Administration notified Mr. DePardo that he was entitled to monthly disability benefits beginning June 2002.  (AR-0415).

3.     On December 6, 2002, Dr. Niceforo wrote:

"From a medical standpoint, I disagree strongly with the insurance company=s determination that Mr. DePardo was no longer disabled after July 14, 2002.  The fact of the matter is that his job as an executive entails a great deal of stress in dealing with people within his company and outside of his company on a daily basis.  It is a job which he has described to me as being fraught with a great amount of anxiety.  I recall discussing this with him on numerous occasions when he was my patient.  I would think that returning to his previous occupation would only increase his depression and increase the risk factors for another significant cardiac event, such as another heart attack or heart failure or sudden death.  Not only would doing his job pose that risk, but in fact, his poor physical and mental condition simply would not allow him to keep up with the tasks and performance level expected of him every day at work.  In fact, I seriously doubt that Mr. DePardo could manage a daily commute on a consistent basis, much less the work involved in between travel to and from the office.

"Overall, it is my medical opinion that Mr. DePardo is totally and permanently disabled, not only from the material and substantial duties of his former executive position with TAC Worldwide Companies, but also from any type of gainful employment.  For the reasons stated herein, my medical opinion is that Mr. DePardo=s prognosis is very poor even with the best medical care and that he faces a very significant risk of sudden death due to his multiple serious health problems."  (AR-0572).

4.     On April 8, 2003, the Human Resources Director of TAC Worldwide, Robert Moritz, told a Sun Life representative that he "thinks the disability claim is legitimate and not related to the income issue."  (AR-0406).

4.     On May 29, 2003, Dr. Guiney wrote:

 "The issue here is whether he is or is not permanently disabled.  By any reasonable standard, a man with an ejection fraction of 24%, diabetes mellitus and hypertension cannot possibly do any of the jobs for which he in the past has had training or experience.  I have told him that he must not return to work, particularly to work of the type he did at his most recent employment."  (AR-0420).

5.     On May 29, 2003, Dr. Guiney also wrote, "The major finding of the test was a severely depressed ejection fraction of 24%."  (AR-0420).

6.      Richard Herman, M.D., a family practitioner, reviewed Mr. DePardo's disability claim on behalf of Sun Life.  On June 3, 2003, he wrote:

> "The issue to be decided in terms of disability is whether or not a 65 year-old man who can perform to the level of 6 mets on a stress test but yet has an ejection fraction of 24% would have the capacity to sustain work in a sedentary occupation.  While it would be helpful if we had a daily activity questionnaire, that is not available to us.  While his own physician, Dr. Guiney, has supported ongoing disability from December 2001 ands continues to support it, I would like to get an opinion from our cardiologist, Dr. Sweeney, whether this level of ejection fraction, which might produce dyspnea under certain situations, is compatible with work in a sedentary occupation?'  (AR-0398).

7.      On June 9, 2003, Dr. Paul Sweeney reviewed Mr. DePardo's disability claim on behalf of Sun Life.  He did not address the issue of Mr. DePardo's reduced ejection fraction.

8.      On June 13, 2003, Perry St. Louis, a Disability Benefit Consultant, hired to review Mr. DePardo's disability claim on behalf of Sun Life, wrote to Dr. Sweeney to ask, "Can you please comment on Mr. DePardo's 24% ejection fraction and the impact this would have on his ability to perform the duties of his occupation?"

9.      Dr. Sweeney replied on June 15, 2003:

> "The stress test evaluates Mr. DePardo's capacity.  With an ejection fraction of 24% the test indicates his exercise capacity.  He is certainly capable from a cardiac viewpoint, to perform the duties outlined in his job description.  Please call me at my office on Monday to discuss any questions.  (885-9905)."

10.     By letter dated June 27, 2003, Sun Life informed Mr. DePardo that on the basis of Dr. Sweeney's statement, it would pay him long-term disability benefits only up to August 11, 2002.  (AR-0385-0386).

**B.      CALCULATION OF BENEFITS**

1.      Mr. DePardo stopped working for TAC Worldwide Companies on December 14, 2001.  (AR-0274).

2.  His pay stub for the period ending December 22, 2001 indicated that $11.50 was deducted from his paycheck to pay a long-term disability insurance premium. (AR-0297).

3.  The weekly employee cost of LTD was $11.50 for employees earning more than $200,000 per year. (AR-0295, AR- 0311).

4.  The $12,000 per month that Mr. DePardo received above his base pay was a commission payment, despite its characterization on his pay stub as a bonus. (AR-0293, AR-0294). Without the monthly commission of $12,000, his annual salary would not have exceeded $200,000.

5.  The Rockingham County (NH) Superior Court determined that TAC Worldwide Companies owed Mr. DePardo a $12,000 commission for the November/December 2001 pay period because TAC failed to notify Mr. Depardo in writing of the reduction in pay. (AR-0406). As a result of the court's decision, Mr. DePardo still received a $12,000 monthly commission at the time of his retirement because of disability. (AR-0406).

The Plaintiff, William A. DePardo,

By his Attorneys,

/s/ Nicholas S. Guerrera
Nicholas S. Guerrera, BBO# 551475
Shaheen Guerrera & O=Leary, LLC
Jefferson Office Park
820A Turnpike Street
North Andover, MA 01845
(978)689-0800

**CERTIFICATE OF SERVICE**

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail pursuant to Fed. R. Civ. P. 5(a).

5

Dated: November 2, 2004                                    /s/ Nicholas S. Guerrera_____
                                                                                        Nicholas S. Guerrera