UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


WILLIAM A. DePARDO,            )
                               )
     Plaintiff,                )
                               )        CIVIL ACTION NO.
     v.                        )        04-10248-DPW
                               )
MFS/SUN LIFE FINANCIAL         )
DISTRIBUTORS, INC. d/b/a       )
SUN LIFE OF CANADA and         )
TAC WORLDWIDE COMPANIES,       )
                               )
     Defendants.               )


                       MEMORANDUM AND ORDER
                          May 20, 2005

     Plaintiff William A. DePardo brings this action under the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. § 1001-1461, seeking review of the denial of long term

disability payments[1] by defendants MFS/Sun Life Financial

Distributors, Inc. d/b/a Sun Life of Canada ("Sun Life") and TAC

Worldwide Companies ("TAC").  See 29 U.S.C. § 1132(a)(1)(B).

Each defendant has moved separately for summary judgment.[2]

     The issues are fully framed by the defendants' motions for

---

[1]In his original pleadings, plaintiff included a claim
arising out of termination of life insurance benefits.  That
claim has been abandoned.  (See Pl.'s Mem. Opp. Sun Life Mot.
Summ. J. at 3.)

[2]TAC questions whether it is a proper defendant in this
benefit denial action.  Because I grant its motion on other
grounds, it is unnecessary to resolve that issue.

summary judgment. There is agreement that the case is ripe for resolution on the agreed-upon administrative record before me.[3] Consequently, I treat the parties' submissions as essentially a case stated. For the reasons set forth below, I resolve the matter by grant of the defendants' motions for summary judgment.

## I. Background

The following facts are taken from defendants' 56.1 statements which cite to the submitted administrative record reviewed by me in resolving this case.

As of December 2001, plaintiff served TAC in the capacity of Vice President of Corporate Project Management. Employees of TAC, such as plaintiff, were covered under an employee welfare benefit plan (the "Plan") funded by a group policy issued by Sun Life. The Plan provided short (STD) and long term disability (LTD) as well as life insurance benefits.

The Plan provided a maximum of 13 weeks of STD benefits in the event an employee must be out of work due to illness or accident. TAC self insured the STD benefits, but Sun Life provided recommendations regarding duration and medical review for STD and sick leave claims. On December 26, 2001, TAC

---

[3] During a scheduling conference on June 7, 2004, the parties agreed to resolution as a case stated on cross motions for summary judgment. Cf. Cook v. Liberty Life Assurance Co. of Boston, 320 F.3d 11, 17 (1st Cir. 2003). Plaintiff's counsel agreed at the hearing on defendants' summary judgment motions that the proceeding could be resolved as a case state despite the fact that he did not file a cross-motion for summary judgment.

submitted a sick leave claim for plaintiff which included a statement by plaintiff's cardiologist, Dr. Timothy Guiney, who opined that plaintiff was incapable of performing the duties of his position as of December 17, 2001.  Sun Life recommended that Mr. DePardo receive benefits for a full 13 weeks beginning on that date.

The Plan's LTD benefits were available to an employee who, "because of Injury or Sickness, is unable to perform all the material and substantial duties of his own occupation."  (A.R. 752.)  Before the administrator is required to accept a claim for LTD, the proof of such claim "must be satisfactory to Sun Life." (A.R. 685, 740.)  Plaintiff submitted a claim for LTD to Sun Life in February of 2002, contending that he was totally disabled due to coronary disease.  The claim was supported by a statement by Dr. Guiney that described plaintiff's limitations as "Class 5 limitation of functional capacity; incapable of minimal (*sedentary) activity" and concluded that he could never return to work.  (A.R. 286.)

As Vice President of Corporate Project Management, plaintiff was in charge of the SMD Business Unit of TAC.  In that position, he supervised a number of employees.[4]  The physical requirements of his position, according to an Employer Statement to Sun Life,

---

[4]In plaintiff's statement to Sun Life, he claimed to supervise 30 employees, while the Employer Statement stated that he had supervisory responsibility over 20 to 25 employees.

included sitting 6 to 8 hours, standing or walking 0 to 1 hours, and driving 0 to 2 hours each day at will.  The job required, on occasion, bending or reaching above shoulder level, but did not require him to lift, climb, kneel, balance, push/pull, or crawl/crouch. (A.R. 290.)  Based on this description, and by reference to the Dictionary of Occupational Titles published by the Department of Labor, Sun Life defined plaintiff's position as sedentary.[5]

Plaintiff's medical records indicated that Mr. DePardo had been experiencing cardiac problems since as early as 1990, undergoing procedures in February and March of 1990 and on April 25, 1997.  Follow-up examinations occurred in June 1997 and in January of 1999.  Apparently, Mr. DePardo performed his job for the better part of this period.

In May 2001, Mr. DePardo saw Dr. Guiney, who noted in the medical records that plaintiff, although having some trouble getting going in the morning, was "doing well at this point." (A.R. 349.)  By November 2001, Dr. Guiney determined that had changed.  During a November 12 visit, Dr. Guiney noted in the chart that Mr. DePardo was in "rather tough shape" and was "depressed and under great pressure at work."  (A.R. 350.)  A month later, with increased anginal attacks continuing and plaintiff attributing their frequency in part to work-related

---

[5]Plaintiff does not dispute this characterization.

stress, Dr. Guiney believed plaintiff should retire. The two "left it that [plaintiff] will speak to the human resources people at work and the owner of his company and make plans to retire, possibly on disability." (A.R. 352.)

Despite Dr. Guiney's opinion of plaintiff's condition, Sun Life determined that plaintiff did not qualify for LTD, informing him of that fact by letter dated March 26, 2002. The letter took the position that Dr. Guiney's notations indicate no "change or complication in Mr. DePardo's medical condition . . . that would have prevented him from performing" his job. (A.R. 271.) Mr. DePardo appealed that decision in May, and later informed Sun Life that he had undergone coronary artery by-pass graft surgery on April 30, 2002. In response, on May 22, 2002, Sun Life requested additional medical records from January 2000 forward, a request it repeated on June 18, 2002. Mr. DePardo submitted additional records on August 3, 2002.

Sun Life submitted the claim file and medical records to a cordiothoracic surgeon, Dr. William Watson, for review. Dr. Watson believed that Mr. DePardo would have been unable to perform his job from December 2001 until his procedure on April 30, 2002 and that "[a]ny further disability would be based on his postoperative course which one would normally expect to be 8-10 weeks because of the physical limitations from the surgical intervention." (A.R. 639.) Consistent with this opinion, Sun Life partially reversed it prior denial of benefits, approving

-5-

payments through July 14, 2002, or 10 weeks from his April 30, 2002 procedure.  When informing Mr. DePardo of their reversal, Sun Life stated that "[a]ll administrative remedies have been exhausted and no additional information will be reviewed."  (A.R. 619.)

Nevertheless, Mr. DePardo appealed Sun Life's decision on September 12, 2002 and submitted additional medical records in December of that same year.  Sun Life accepted the records and agreed to review the claim.  The additional materials were from Dr. Guiney, as well as Mr. DePardo's former primary care physician, Dr. Niceforo.  Both contended that Mr. DePardo was totally disabled.  Sun Life arranged for further medical review by Dr. Marc Friedman, who opined that Mr. DePardo possibly was experiencing a slow recovery from his procedure and recommended a stress test and follow-up evaluation.  Sun Life scheduled an Independent Medical Evaluation ("IME") which would include a stress test, notifying plaintiff that LTD benefits need not be paid for periods during which he failed to submit to such an evaluation.

Although Mr. DePardo would not agree to undergo the cardiac IME, he did agree to a stress test administered by his own doctor.  That stress test, administered on May 30, 2003, indicated a reduced ejection fraction (24%)[6] and an exercise

---

[6]This indicates the percentage of blood pumped out of the heart each time it contracts.

capacity, described as "normal", of 6 METS. These results reinforced Dr. Guiney's opinion, which he restated in a letter dated May 29, 2003, that plaintiff was "totally and permanently disabled." (A.R. 420.)

This new material was reviewed by a Dr. Richard Herman, a family practitioner, on June 3, 2003, who recommended further review by a cardiologist to address the effect of the reduced ejection fraction on plaintiff's ability to perform a sedentary job. A cardiologist, Dr. Sweeney, determined that Mr. DePardo was capable of performing his job and that his "other medical problems including depression, obesity, diabetes, hypertension and hyperlipidemia were all present at the time of the stress test and throughout the post operative course." (A.R. 389.) Dr. Sweeney predicted that plaintiff would have been able to return to work within two to four weeks of a July 16, 2002 visit with Dr. Guiney. Consequently, Sun Life extended his benefits until August 11, 2002, but denied them thereafter.

In addition to his claims regarding the denial of benefits, Mr. DePardo contends that the benefits he did receive from Sun Life were miscalculated. The Plan provides: "You will receive 66 2/3% of your weekly salary (an average of your base salary plus commission) for up to a total of 13 weeks you need to be out of work." (A.R. 821 (emphasis added).) During 2001, plaintiff's base salary was $85,000, but for a period of time he also received an additional payment each month reported on his pay

stub as a "bonus" not as "commissions."  Apparently these payments ended in November of 2001 when a new CEO at TAC refused to continue the payments.  Mr. DePardo brought suit in New Hampshire Superior Court seeking reinstatement of the payments and was awarded one additional payment because the new management did not put its change of practice in writing.  Plaintiff contends that these payments were "commissions" to be included in the base for his benefit calculations.

## II. Discussion

Plaintiff brought this action seeking relief under 29 U.S.C. § 1132(a)(1)(B) of ERISA, which provides that "[a] civil action may be brought -- (1) by a participant or beneficiary -- . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

### A.  Calculation of STD Benefits

In his memoranda in opposition to summary judgment, plaintiff contends that there exists a genuine issue of material fact as to whether the STD benefits he was paid were miscalculated.  But, consistent with the parties' determination to have me decide this matter as a case stated, I resolve that issue by finding as a factual matter that the payments listed as a bonus on his pay stubs were not "commissions" and consequently are not included in the base for benefit calculations.

Plaintiff himself recharacterized the pay stub's "bonus" payments as "commissions" in his New Hampshire compensation litigation after the question of the nature of the additional compensation became an issue in his ERISA dispute.  But plaintiff's own recharacterization in the New Hampshire litigation does not fit the customary definition of a commission.  In his Non-Payment of Wage Complaint initiating the compensation litigation, plaintiff contended the "per month flat commission was intended to approximate what would be a monthly average over a twelve month period."  (A.R. 0293).  He termed the flat commission "as a less stressful arrangement for me.  My commission would no longer [be] based upon a fluctuating performance of the business unit."  But it is precisely individualized performance which characterizes a commission.  A commission in this setting is defined as "[a] fee paid to an agent or employee for a particular transaction, usu[ally] as a percentage of the money received from the transaction."  Black's Law Dictionary 286 (8th ed. 2004).  By contrast, a bonus is not so particularized but rather is pay "for services or on consideration in addition to or in excess of the compensation that would ordinarily be given."  Id. at 194.

While the New Hampshire compensation litigation did not resolve the "bonus" versus "commission" recharacterization issue because it was not necessary to the result, I find that the proper characterization of those additional payments was, as the

-9-

pay stubs had them, not as a "commission" but as a "bonus."  Upon this record the additional compensation did not add to his base salary for this disability claim.

### B.  Denial of LTD Benefits

When a plaintiff challenges a denial of benefits under § 1132(a)(1)(B), a court reviews that denial "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine the eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989); see Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir. 1998) (noting the First Circuit has "steadfastly applied Firestone to mandate de novo review of benefits determinations unless 'a benefits plan . . . clearly grant[s] discretionary authority to the administrator'") (quoting Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 583 (1st Cir. 1993)).  A court applies an arbitrary and capricious standard of judicial review when evaluating a denial of benefits pursuant to a plan granting a plan administrator discretion.  Terry, 145 F.3d at 37.

Here, defendants have "point[ed] to . . . language in the Plan giving [them] the 'discretionary authority' required" to avoid de novo review.  Bellino v. Schlumberger Technologies, Inc., 944 F.2d 26, 29 (1st Cir. 1991).  The Plan provides that proof of claim "must be satisfactory to Sun Life," (A.R. 685.) language sufficient to confer discretionary authority on the plan

administrator. See Brigham v. Sun Life of Canada, 317 F.3d 72, 81-82 (1st Cir. 2003). Plaintiff does not dispute that the Plan grants discretion to Sun Life. In fact, he distills the "question presented" by Sun Life's motion as "whether [it] acted in an arbitrary and capricious manner in terminating Mr. DePardo's long-term disability benefits."

The arbitrary and capricious standard is deferential. I may not upset the denial of benefits here unless that decision "was unreasonable in light of the information available to [the Plan administrator]." Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415, 419 (1st Cir. 2000). "In making this determination, [I] look to the record as a whole; 'the "whole" record consists of that evidence that was before the administrator when he made the decision being reviewed.'" Cook v. Liberty Life Assurance Co. of Boston, 320 F.3d 11, 19 (1st Cir. 2003) (quoting Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997)). To the extent the administrator's decision "was within [its] authority, reasoned, and supported by substantial evidence in the record" it cannot be said to be arbitrary and capricious.[7] Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998). Accordingly, "[t]he existence of contrary evidence does not necessarily render [the defendants'] decision

---

[7]In the First Circuit, "there are no substantive differences between 'arbitrary and capricious' and 'abuse of discretion' review in the ERISA context." See Cook, 320 F.3d at 17 n.7.

arbitrary."  Boardman v. Prudential Ins. Co., 337 F.3d 9, 15 (1st Cir. 2003).

A case such as this appears well-suited for resolution by motions for summary judgment on the administrative record. Although plaintiff has failed to file a cross-motion, there is no uncertainty about whether he agrees to have the case decided in such a manner.  At the motion hearing, plaintiff's counsel reaffirmed his agreement to resolution as a case stated.  See Note 3 supra.  It is nevertheless appropriate to consider how, if at all, the result might differ if resolved as a traditional summary judgment motion.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party seeking summary judgment must make a preliminary showing that no genuine issue of material fact exists.  Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995), cert. denied, 515 U.S. 1103 (1995).  Once the movant makes such a showing, the nonmovant must point to specific facts demonstrating that there is, indeed, a trialworthy issue.  Id.

A fact is "material" if it has the "potential to affect the outcome of the suit under the applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000),

and a "genuine" issue is one supported by such evidence that "a 'reasonable jury, drawing favorable inferences,' could resolve it in favor of the nonmoving party."  <u>Triangle Trading Co., Inc. v. Robroy Indus., Inc.</u>, 200 F.3d 1, 2 (1st Cir. 1999) (quoting <u>Smith v. F.W. Morse & Co.</u>, 76 F.3d 413, 428 (1st Cir. 1996)).  "[C]onclusory allegations, improbable inferences, and unsupported speculation," are insufficient to establish a genuine dispute of fact.  <u>Medina-Munoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990).

Whether I determine, on a case stated, the appropriate factual inferences to draw or draw all reasonable inferences in favor of plaintiff, it is clear from the administrative record that there is no genuine issue of material fact whether substantial evidence existed upon which Sun Life could base a denial of benefits.[8]  The nub of plaintiff's argument in opposition to Sun Life's motion is that Dr. Sweeney's opinion regarding plaintiff's ability to work is "wholly unbelievable".  Plaintiff provides no basis for finding that the opinion may not be credited, but rather argues that Dr. Sweeney placed too much emphasis on a single aspect of a stress test.  It is not the job of the courts, however, without clear indication that the opinion

---

[8] Nor does the drawing of inferences in favor of plaintiff save his calculation of benefits claim.  There are no clearly delineated factual disputes regarding that issue, simply a mixed question of law and fact regarding characterization.  Without pointing to evidence in the record upon which an inference that the monthly payments were commissions could be based, plaintiff may not survive summary judgment on this point.

should not be credited, to decide which medical opinion the Plan administrator should rely upon. See Arsenault v. Metro Life Ins. Co., 2004 U.S. Dist. LEXIS 19865, at *29-30 (D.N.H., Oct. 1, 2004); see also Donaho v. FMC Corp., 74 F.3d 894, 901 (8th Cir. 1996) ("Where there is a conflict of opinion the plan administrator does not abuse his discretion in finding that the employee is not disabled."), abrogated on other grounds by Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003).

In essence, plaintiff asks the court to find that the opinion of Dr. Guiney, because contrary to a denial of benefits, vitiates the sufficiency of the evidence relied upon by Sun Life. I may not do so. "Sufficiency, of course, does not disappear merely by reason of contrary evidence," Doyle, 144 F.3d at 184, a proposition plaintiff himself identifies. (See Pl.'s Mem. Opp. to Sun Life's Mot. Summ. J. at 2 ("The plaintiff is not requesting that the Court find Dr. Sweeney's opinion less reliable than the opinions of his treating physicians, Dr. Niceforo and Dr. Guiney. If that were the case, the Court's decision would have to favor the defendant.") (citing Nord, 538 U.S. 822 (2003)).) Plaintiff points to nothing in the administrative record that would permit the inference to be drawn that Dr. Sweeney's opinion is wholly lacking in credibility.

In any event, I need not find that Dr. Sweeney's opinion alone formed a sufficient basis upon which to deny benefits. As is clear from the administrative record, Sun Life received -- at

one time or another -- medical opinions from at least three other physicians.  Plaintiff does not contend that these opinions are also "wholly unbelievable".  And, the fact that the doctors relied upon by Sun Life did not personally examine plaintiff, but rather reviewed his records, does not require automatic deference to the treating physician.  See McLaughlin v. The Prudential Life Ins. Co. of Amer., 319 F. Supp. 2d 115, 126 (D. Mass 2004) (noting that an administrator is not "precluded from relying on the assessment of a non-examining medical consultant") (citing Gannon v. Metropolitan Life Ins. Co., 360 F.3d 211, 216 (1st Cir. 2003)).  I cannot say that it was arbitrary or capricious for the insurer to base its decision on such opinions absent some indication that the opinions lacked a reasonable basis.

    The question is not whether, acting de novo, I might find Dr. Guiney's opinion persuasive.  Under the relevant standard of review the decision is Sun Life's.  I conclude Sun Life was not required to accept Dr. Guiney's conclusions.  See McLaughlin, 319 F. Supp. 2d at 126 ("There is no requirement under ERISA that a plan administrator defer to the opinion of a claimant's treating physician.") (citing Nord, 538 U.S. at 834.).  Cf. Wright, 402 F.3d at 77 ("Hartford was not acting in bad faith, or under an improper motivation, in relying on Dr. Cohen's conclusions to deny benefits to Wright without an independent medical evaluation.").  Here, the records and additional medical opinions provide bases for a different conclusion from that of Dr. Guiney.

Cf. Wright, 402 F.3d at 78 (affirming the decision of the district court, which "reasoned that although there was conflicting medical evidence, there was sufficient evidence that [the plaintiff's] impairment's were minor and not disabling according to the STD and LTD Plan provisions"); Brigham, 317 F.3d at 84 ("The insurer's decision to look beyond the subjective conclusions of family and others close to him -- and beyond his doctors' unelaborated conclusions -- to the specific abilities listed on [his doctor's] medical forms was not inevitable, but neither was it arbitrary.").

Sun Life did not simply reject a doctor's opinion and provide no indication regarding the basis for its decision.  In Cook, where the First Circuit found that a plan administrator's denial was arbitrary and capricious, the court noted that "if [the administrator] seriously questioned the veracity of [a doctor's] opinion, [it] could have required [plaintiff] to get an Independent Medical Examination or subjected [the doctor's] chart notes and opinions to review by another physician."  Cook, 320 F.3d at 23.  Defendants made good faith efforts to develop the record in this case in both the fashions referenced by the court in Cook.  Plaintiff's refusal to subject himself to an IME cannot now be used to substantiate a claim that the Plan administrator acted in an arbitrary and capricious manner.

### III.  Conclusion

-16-

   The question before me is whether defendants' denial of plaintiff's claim for benefits was, as a matter of law, arbitrary and capricious in light of the agreed-upon administrative record. I conclude that it was not.

   Further, I find the calculation of his STD benefits to be correct as a matter of fact because plaintiff's additional compensation is properly characterized as a bonus rather than commissions.

   Consequently, the defendants' motions for summary judgment are GRANTED.

                                        /s/ Douglas P. Woodlock
                                        _____
                                        DOUGLAS P. WOODLOCK
                                        UNITED STATES DISTRICT JUDGE